UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JEAN SOTO,  :
   :
    Plaintiff  :
   :
v.  : CIVIL NO. 3:CV-14-1183
   :
PRISON HEALTH SERVICES, INC., : (Judge Kosik)
et al.,  :
   :
    Defendants  :

FILED SCRANTON
DEC 1 9 2014
PER _____ DEPUTY CLERK

**MEMORANDUM**

Plaintiff, Jean Soto, ("Soto") filed this civil rights action pursuant to 42 U.S.C. § 1983. At the time, he was confined at the State Correctional Institution at Mahanoy (SCI-Mahanoy), Pennsylvania.[1] Named as Defendants are Prison Health Services, Inc. ("PHS"), the Pennsylvania Department of Corrections ("DOC"), and Dr. Lisiak, prison physician. Soto claims that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment with respect to an injury to his finger. Presently pending are motions to dismiss by Defendants DOC and Lisiak.

---

[1] In verifying Soto's address through the Pennsylvania Department of Corrections Inmate Locator, see www.cor.pa.gov, the court has learned that he is now confined at the Quehanna Boot Camp, Karthaus, Pennsylvania. Despite his transfer, Soto has never advised the court of his address change as required by the Standing Practice Order issued in this case on June 19, 2014. (Doc. 5.) The Clerk of Court will be directed to change his address on the docket.

(Docs. 19 and 21.) Also pending is a motion to dismiss, or in the alternative, motion for summary judgment, filed by Defendant PHS, Inc. (Doc. 15.) Despite a warning order issued to Soto, he has failed to file any opposition to the motions. For the reasons that follow, the motions will be deemed unopposed and granted.

I.  **Allegations in the complaint**

On September 25, 2013, Plaintiff injured the pinky finger on his right hand while in the gym at SCI-Mahanoy. He was examined the following day by Physician Assistant Ianuzzi, who attempted to pull the finger back into place. (Doc. 1, Compl. at 3.) X-rays were taken on the finger on October 4, 2013. On October 15, 2013, Soto was informed that the x-rays showed a partially dislocated finger. He was also told that an orthopedic consult would be ordered.

On October 24, 2013, Soto was examined by Dr. Lisiak. Lisiak noted that he had minimal swelling and adequate circulation, but was experiencing difficulty flexing his finger. Soto was informed that while an orthopedic consultation was ordered, the approval process could take some time. (Id.) According to Soto, a date during the week of October 28, 2013, was discussed as a possibility. On October 28, 2013, Dr. Lisiak ordered a medical lay-in to restrict Soto's activities and prevent any further injury to his finger.

On November 1, 2013, Plaintiff filed a grievance with respect to the delay in the treatment of his finger. In responding to the grievance, Registered Nurse

Supervisor Kim Minarchick detailed the process involved in scheduling a consult, and his grievance was denied. Appeals from the denial were also unsuccessful. On November 26, 2013, Soto was taken for the orthopedic consult. He alleges that he was told that ". . . the finger would never be the same because of the delay" and that he required hand surgery. (Id. at 3.) He was told that he would experience minimal pain for the rest of his life. Surgery was performed on March 31, 2014, by Dr. Joel Kleha at Geisinger Medical Center. Soto subsequently learned that he would never have full range of movement in his right pinky finger again. (Id. at 4.)

He files this complaint alleging inadequate medical care with respect to his finger injury. He argues that PHS, Inc. maintained control over his treatment and, due to budgetary constraints and reporting requirements, are responsible for the delay in treatment that resulted. He seeks to hold Dr. Lisiak responsible because he "acquiesced in" PHS's control of the matter. He claims that the DOC violated his Eighth Amendment rights due to its inaction despite knowledge of the delay. He seeks declaratory, compensatory and punitive relief. (Id. at 4.)

## II.   Legal Standards

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the

light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving the motion to dismiss, the court must "conduct a two-part analysis." Fowler, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. Id. at 210-11. Second, it "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the

4

screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S. C. § 1915(e) because he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the Prison Litigation Reform Act's ("PLRA") screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Id.,; Dare v. U.S., 2007 WL 1811198, *4 (W.D. Pa. 2007), aff'd, 264 F. App'x 183 (3d Cir. 2008).

B. Motion for Summary Judgment

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and

should not evaluate credibility or weigh the evidence. See <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764, 772 (3d Cir. 2013)(citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. See <u>id</u>. at 773 (citing <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. See <u>Reedy v. Evanson</u>, 615 F.3d 197, 201 (3d Cir. 2010)(citing <u>Peterson v. Lehigh Valley Dist. Council</u>, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." <u>Layshock ex rel. Layshock v. Hermitage Sch. Dist.</u>, 650 F.3d 205, 211 (3d Cir. 2011)(quoting <u>Anderson</u>, 477 U.S. at 247-

48)(internal quotation marks omitted).

### III. Discussion

In the instant case, Plaintiff has failed to oppose the motions filed by Defendants. As a result, an order was issued on October 22, 2014, directing Plaintiff to file his briefs in opposition within fourteen (14) days. He was warned that the failure to do so would result in the motions being deemed unopposed pursuant to M.D. Pa. L.R. 7.6. (Doc. 23.)

#### A. Motion to dismiss filed by DOC

It is well-settled that neither a state nor its agencies is a "person" as that term is used in Section 1983 and, thus, is not subject to suit. Hafer v. Melo, 502 U.S. 21, 25-27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Adams v. Hunsberger, 262 F. App'x 478, 481 (3d Cir. 2008)(holding that the Department of Corrections is not a "person" under 1983). Accordingly, the section 1983 claim against the Department of Corrections will be dismissed.

Moreover, to establish an Eighth Amendment claim for a denial of adequate medical care, an inmate must demonstrate deliberate indifference to a serious medical need on the part of the prison officials. See Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference can be shown where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment prescribed for a serious medical need. Id. at 104-105. The Department of Corrections is not a

person and, as such, is incapable of forming the necessary "intent."  See Credico v. West Goshen Police, 547 F. App'x 126, 129 (3d Cir. 2014).

Based on the foregoing, Defendant DOC's motion to dismiss the complaint will be granted.

### B.   Motion to dismiss filed by Dr. Lisiak

Defendant Lisiak seeks the dismissal of the complaint due to Plaintiff's failure to allege facts alleging deliberate indifference on his part to a serious medical need. A constitutional violation under the Eighth Amendment in the medical context occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of

permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that mere misdiagnosis of a condition or negligent treatment provided for a condition, is not actionable under the Eighth Amendment because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. Deliberate indifference is generally not found when some significant level of medical care has been offered to an inmate, see Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997), or where claims are based upon the level of professional care that an inmate has received, see Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Liability may not be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement may be shown by alleging facts sufficient to show: (1) actual participation in the misconduct, (2) knowledge of and acquiescence in the misconduct or (3) circumstances in which inaction sends a message of approval of the misconduct. Chinchello v. Fenton, 805 F.2d 126 (3d Cir. 1986). Allegations regarding participation or actual knowledge and acquiescence must be made with appropriate particularity. Id.

Prison officials, who are not physicians, cannot be considered deliberately

indifferent simply because they failed to respond to the medical complaints of a prisoner who was already being treated by medical personnel of the prison. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Further, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement). Allegations that prison officials and administrators responded unfavorably to an inmate's later filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation. See Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).

In his complaint, Soto acknowledges that his pinky finger was examined promptly after the injury and that he was provided with an x-ray. He further does not allege that an orthopedic specialist consultation was not timely ordered. Rather, he contends that the two month delay in seeing the orthopedic specialist caused him to suffer a permanent injury.

In his complaint, Soto references the grievance and appeals therefrom he filed with respect to this matter. (Doc. 1, Compl. at 2-3.) The response to the initial grievance reveals that Soto was injured playing basketball on 9/25/13 and was triaged the same day and provided with a splint and Ibuprofen for discomfort. The next day he was seen in sick call and a dislocation was noted. He was given a digital block

and the dislocation was reduced. He was also provided with an ice pack. Naprosyn and an x-ray were ordered. The x-ray was done on 10/4/2013, confirming the dislocation. Soto was then referred to see Defendant Lisiak on October 17, 2013. After examining Soto, Lisiak referred him to an orthopedic specialist. He was seen by the specialist on November 26, 2013 at Sun Ortho, who recommended an orthopedic surgeon. (Doc. 22, Ex. A at 6.)

While Plaintiff argues that the delay in being seen by the orthopedic specialist resulted in permanent injury to his finger, there are simply no facts alleged that Dr. Lisiak was deliberately indifferent to Soto's serious medical needs. Lisiak saw Soto at sick call, examined him, and ordered an orthopedic consult. Soto was advised that the approval process could take some time. In the interim, however, Lisiak ordered a medical lay-in for Soto to reduce any further harm to his finger.

While Soto argues that budgetary constraints and reporting requirements delayed his visit with an orthopedic, thereby resulting in permanent injury to his finger, this is nothing but a conclusory allegation with no facts alleged to support it. In addition, to the extent Soto's appointment with the orthopedic was delayed due to any processing requirements in scheduling the appointment, this would amount to negligence at best. Moreover, there are no allegations that Dr. Lisiak had any control over the timetable once he issued an order for an orthopedic consult. Rather, the complaint reveals that between the time he sustained the injury and he was seen by the

11

outside specialist, Soto was provided with routine medical care for his finger including examinations, pain relievers, an attempt to reset the finger and x-rays. Dr. Lisiak even ordered a medical lay-in while Soto was awaiting his orthopedic appointment. For these reasons, Soto fails to state a claim of deliberate indifference and the pending motion to dismiss will be granted.

    C.    **Motion to dismiss, or in the alternative, motion for summary judgment, filed by PHS, Inc.[2]**

Soto seeks to impose liability on PHS, Inc. claiming that said Defendant maintained control over his medical care with respect to his injury, specifically with respect to the delay that resulted in being seen by the orthopedic specialist. He claims that the delay was due to budgetary constraints and reporting requirements.

Without unnecessary elaboration, Defendant's motion will be granted for the following reasons. PHS, Inc., is a contract provider of correctional healthcare which in the past, contracted with the Pennsylvania DOC to provide medical care and treatment to inmates incarcerated within its institutions. (Doc. 16 ¶ 1.) On July 7, 2011, the Pennsylvania DOC notified PHS in writing that it would be procuring proposals relative to the continued delivery of correctional healthcare within its

---

[2] Because evidentiary materials have been submitted by Defendant in support of their arguments upon which the court will rely, the motion will be addressed as one for summary judgment. There is no need to first provide Soto with notice of such, in that the motion is clearly labeled as one to dismiss, or for summary judgment, and the court's warning order advised Soto of his obligation to oppose the motion as filed.

institutions. (Id. ¶ 2.) On June 29, 2012, PHS was advised that its proposal to the DOC for the continued delivery of healthcare within its institutions was denied. (Id. ¶ 3.) As such, as of January 1, 2013, PHS has neither provided correctional healthcare at institutions within the Pennsylvania DOC, nor has PHS been otherwise associated therewith in any way. (Id. ¶ 4.) As such, PHS would not have been involved in Plaintiff's care and treatment as provided within the Pennsylvania DOC from September through November of 2013, the relevant dates contained in his allegations. For these reasons, Defendant's motion for summary judgment will be granted. An appropriate order follows.